**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELIZABETH A. JUDD, | No. CV-07-01740-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court are the Motion for Summary Judgment of Plaintiff Elizabeth A. Judd (Dkt. # 21) and the Cross-Motion for Summary Judgment of Defendant Michael J. Astrue, Commissioner of Social Security (Dkt. # 22). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.[1]

## BACKGROUND

On April 13, 2004, Plaintiff applied for disability insurance benefits, alleging a disability onset date of September 12, 2003. (R. at 48-51.) Plaintiff's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have

---

[1] Plaintiff has requested oral argument. That request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

been disabled, was December 31, 2008. (*See* R. at 12.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 25-28; R. at 31-33.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 34.) The ALJ conducted a hearing on the matter on April 7, 2006. (R. at 506-24.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (R. at 12-17.) At step one, the ALJ determined that, although Plaintiff had worked in several jobs throughout 2004, 2005, and part of 2006, including work of four and a half hours per day, five days per week, Plaintiff nonetheless had not engaged in substantial gainful activity. (R. at 12-13.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of a "history of deep vein thrombosis and history of necrosis in [the] right thigh in 2003." (R. at 13.) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

---

[2]The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

At step four, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff could perform a full range of sedentary work. (*Id.*) Sedentary work "involves sitting most of the time" and "walking or standing for brief periods of time." *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* app. C (4th ed. 1991), *available at* http://www.oalj.dol.gov/public/dot/references/dotappc.htm [hereinafter "DOT Appendix C"]. The ALJ determined that Plaintiff did not retain the RFC to perform her past relevant work as a cashier, daycare worker, kitchen worker, and operations clerk. (R. at 15.) The ALJ therefore reached step five, determining that Plaintiff could perform a significant number of other jobs in the national economy that met her RFC limitations. (R. at 15-16.) Given this analysis, the ALJ concluded that Plaintiff was not disabled. (R. at 17.)

The Appeals Council declined to review the decision. (R. at 5-7.) Plaintiff filed the complaint underlying this action on September 11, 2007, seeking this Court's review of the ALJ's denial of benefits.[3] (Dkt. # 1.) Plaintiff filed her Motion for Summary Judgment on November 6, 2008. (Dkt. # 21.) Defendant filed his Cross-Motion for Summary Judgment on December 12, 2008. (Dkt. # 22.)

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which,

---

[3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff argues that the ALJ erred by improperly: (A) assessing the credibility of her subjective complaints (Dkt. # 21 Pt. 3 at 2-9), (B) determining her residual functional capacity (*id.* at 9-11), (C) relying on the vocational expert's testimony (*id.* at 11-13), and (D) informing Plaintiff of her right to representation (*id.* at 13-14). The Court will address each argument in turn.

### A. Credibility Determination Regarding Subjective Complaints

Plaintiff's first argument is that the ALJ erred by failing to properly assess the credibility of her subjective complaints that she was totally disabled by her pain. (Dkt. # 21 Pt. 3 at 2-9.) "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating

clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958.

Here, the ALJ found that Plaintiff's subjective complaints of totally disabling pain were not fully credible. The ALJ first acknowledged Plaintiff's ongoing problems with her legs, including that she had undergone surgery in October of 2003 to treat lesions that had developed on her right leg secondary to her use of Coumadin, a drug Plaintiff had used to treat deep venous thrombosis in her left leg. (R. at 14; *see also* R. at 133-168, 169, 247-249, 257, 283-84, 347.) The ALJ explained that Plaintiff was doing "reasonably well" after surgery, although she developed some swelling, decreased sensation at the medial aspect of her right knee, and slight pretibial edema bilaterally. (R. at 14; *see also* R. at 272-82, 311-32, 347-49.) However, the ALJ pointed out that there was no loss of strength in the right adductor muscles, that Plaintiff had not experienced any acute episodes since the alleged onset date, and that Plaintiff had not had any treatment other than adjustment in her medication dosage. (R. at 14; *see also* R. at 311-32, 347-49.) The ALJ further considered that Plaintiff is not taking any medication for pain or edema. (R. at 14.) Finally, the ALJ took stock of the opinion of Dr. McPhee, a consultative examiner, who stated that Plaintiff could perform any level of work that does not involve standing or walking more than four to five hours a day. (R. at 15; *see also* R. at 347-52.)

The ALJ also considered non-medical evidence. The ALJ pointed out that, while Plaintiff's leg problem "may be uncomfortable, it does not prevent her from standing 4 ½ hours a day at work and engaging in her activities of daily living." (R. at 14.) Plaintiff

- 5 -

1 engaged in work activity starting in March of 2004, and in March of 2005 began working "at
2 a level close to substantial gainful activity." (R. at 14; *see also* R. at 83, 512-13.) At that
3 time, Plaintiff began working for four and a half hours a day, five days a week, and she was
4 "on [her] feet constantly." (R. at 14; *see also* R. at 512-13.) As the ALJ pointed out,
5 Plaintiff's stated inability to tolerate compression stockings and need to periodically elevate
6 her legs has not prevented her from performing her job. The ALJ also relied on evidence that
7 Plaintiff can perform a number of activities of daily living, including housework and driving.
8 (R. at 14; *see also* R. at 69-71.)

9        Plaintiff agrees that the ALJ's reasons for rejecting her subjective complaint testimony
10 were sufficiently specific. (Dkt. # 21 Pt. 3 at 9.) Plaintiff merely argues that those reasons
11 were not based on substantial evidence and were not clear and convincing. However, the
12 type of evidence on which the ALJ relied is the proper foundation for a credibility
13 determination. *See Thomas*, 278 F.3d at 958-59 (holding that in evaluating a claimant's
14 credibility, "[t]he ALJ may consider . . . inconsistencies . . . between her testimony and her
15 conduct, [the] claimant's daily activities, her work record, and testimony from physicians and
16 third parties concerning the nature, severity, and effect of the symptoms of which [the]
17 claimant complains"). Thus, if substantial evidence supports the ALJ's findings, the Court
18 will be satisfied that "the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.*
19 at 958.

20        As cited above, substantial evidence in the record does support the ALJ's findings.
21 Plaintiff first argues that the ALJ's description of Plaintiff as having a "history" of deep vein
22 thrombosis and "history" of necrosis is not supported by the record because these diagnoses
23 "were not merely historical." (Dkt. # 21 Pt. 3 at 7-8.) However, "[a]s a reviewing court, we
24 are not deprived of our faculties for drawing specific and legitimate inferences from the
25 ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). It is clear from
26 the ALJ's decision that he was not finding that Plaintiff only suffered from those
27 impairments in the past, but rather was finding that there was a record of those impairments
28 throughout the medical evidence. The ALJ's finding that Plaintiff's thrombosis and necrosis

1  were "severe" impairments for the benefit period makes clear that the ALJ was not merely
2  treating them as historical conditions. (*See* R. at 13.)

3  Plaintiff also asserts that the ALJ erred in stating that she "had no visits to the
4  emergency room or complaints to her doctors" after March 2005. (Dkt. # 21 Pt. 3 at 8 (citing
5  R. at 14).) There is evidence in the form of insurance claim invoices that suggests that
6  Plaintiff did visit a hospital during 2005 and 2006, although it is unclear whether she went
7  to an emergency room on any of those occasions, and the nature of Plaintiff's complaints
8  when she did visit the hospital are likewise unclear from the invoices. (*See* R. at 388, 437-
9  41, 444-46, 468-69, 453-54, 471-72, 474-75, 477, 479, 480-81, 483, 485, 491-92.) There is
10 also a note from Plaintiff's treating physician, Dr. Bachrach, which provides that two of the
11 hospital visits in 2005 were "owing to exacerbation of her [venous thrombosis], and also
12 skin-related complications from the same." (R. at 388.) Thus, although the ALJ's statement
13 about "emergency room" visits and Plaintiff's "complaints" may be technically correct, it
14 might be viewed as mischaracterizing the evidence to some degree.

15 However, to the extent that the ALJ erred in this regard, any error was harmless. *See*
16 *Batson*, 359 F.3d at 1197 (explaining that an ALJ's error is harmless if it does not affect his
17 ultimate conclusion). The statement that Plaintiff "had no visits to the emergency room or
18 complaints to her doctors" was but one sentence amidst a litany of reasons offered by the
19 ALJ for discounting Plaintiff's allegation that her pain was so disabling as to preclude all
20 work. There is no indication that this reason played a significant role in the ALJ's analysis.
21 Rather, the essential predicate of the ALJ's reasoning was the fact that, despite her
22 allegations of disabling pain, Plaintiff was still able to work standing up for four and a half
23 hours per day, five days per week. This one sentence does not affect that finding, nor does
24 it undermine the ALJ's reasoning that a claimant capable of such work is not totally disabled
25 by her pain. Thus, the ALJ did not commit reversible error in this regard. *See id.* at 1196-97
26 (holding that a single error in a credibility determination was harmless error because the ALJ
27 gave numerous reasons for finding the claimant not credible that were supported by
28 substantial evidence); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir.

1  2008) ("[T]he ALJ's error in relying on Carmickle's receipt of unemployment benefits and
2  on his relatively conservative pain treatment regime does not negate the validity of the ALJ's
3  adverse credibility finding. . . . [T]he remaining valid reasons supporting the ALJ's
4  determination are not relatively minor.  They are specific findings related to Carmickle's
5  ability to perform vocational functions, and they clearly demonstrate that to the extent the
6  ALJ found Carmickle's testimony incredible, the ALJ did not do so arbitrarily.") (internal
7  citations and quotations omitted).  Likewise, the ALJ's credibility determination in this case
8  was based on many other specific findings that were supported by substantial evidence in the
9  record, and the ALJ's single error on this point (if it was error) therefore does not negate the
10 validity of the credibility determination.[4]

11 　　　　　Additionally, Plaintiff points out that she has "more issues" when she is "on her feet
12 constantly."  (Dkt. # 21 Pt. 3 at 4; *see* R. at 513.)  Even if true, that does not undermine the
13 ALJ's reasoning that Plaintiff did not suffer from pain that was completely disabling such
14 that she could not work at all – it is only evidence that she could not be "on her feet
15 constantly."  Because the ALJ found Plaintiff capable of only sedentary work, which by
16 definition "involves sitting most of the time," DOT Appendix C, Plaintiff's argument that she
17 could not be "on her feet constantly" is inapposite.

18 　　　　　Plaintiff further makes note of evidence in the record indicating that she experienced
19 foot, ankle, and/or leg swelling when she stood for long periods of time.  (Dkt. # 21 Pt. 3 at
20 4-5.)  Again, this argument is inapposite because the ALJ only concluded that Plaintiff was
21 capable of sedentary exertion.  Regardless, Plaintiff's argument based on this evidence is
22 merely that a finding of disability is "the most logical, and reasonable, inference."  (*Id.* at 5.)
23 Such an argument about the best interpretation of evidence subject to multiple interpretations
24 is beyond the Court's purview.  *See Batson*, 359 F.3d at 1198 ("When the evidence before

25

---

26 　　　　　[4]Plaintiff also points out that she has not always worked every day of the workweek
27 (Dkt. # 21 Pt. 3 at 4), but by her own admission Plaintiff did begin working five days a week
   for four and a half hours a day in 2005, and that was in a position in which she was "on [her]
28 feet constantly."  (R. at 513.)

- 8 -

1   the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's
2   conclusion."). The ALJ could have rationally concluded from the evidence he cited that
3   Plaintiff was capable of performing the most basic of work activities, sedentary exertion, and
4   thus Plaintiff's argument fails.
5         Finally, at some points in this section of her brief, Plaintiff seems to argue that the
6   ALJ erred by failing to develop the record. (Dkt. # 21 Pt. 3 at 5-6, 8.) These statements,
7   which appear as scattered references and not as part of a coherent argument, seem to center
8   on the absence of certain insurance claims invoices from the ALJ's consideration. (*See* Dkt.
9   # 21 Pt. 3 at 5-6, 8; Dkt. # 21 Pt. 2 at 19 ¶ 72.) To the extent Plaintiff is attempting to argue
10  that the ALJ failed to fulfill his duty to develop the record by not considering these invoices,
11  the Court disagrees. While the ALJ does have a duty to develop the record in Social Security
12  cases, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), that duty is triggered only if
13  there is ambiguous evidence or if the record is inadequate to allow for a proper evaluation
14  of the evidence, *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff
15  presumably is suggesting the latter, but as Plaintiff herself points out, the ALJ had several
16  "detailed statements" from Plaintiff's physicians that presented the relevant medical
17  evidence. (Dkt. # 21 Pt. 3 at 6.) The record also contains detailed disability reports, work
18  activity reports, hospital treatment notes, and laboratory reports. Furthermore, the invoices
19  Plaintiff cites merely provide dates and charges for certain services, and they are almost
20  entirely unhelpful in evaluating the key question with which the ALJ grappled: whether
21  Plaintiff's symptoms were of sufficient severity so as to preclude all work, or if they only
22  precluded certain types of work. (*See* R. at 437-41, 444-46, 453-54, 468-69, 471-72, 474-75,
23  477, 479, 480-81, 483, 485, 491-92.) The record was sufficient for the ALJ to properly
24  evaluate the evidence, and the evidence Plaintiff cites would not have been helpful in any
25  event. The Court therefore finds no error.

26        **B.**    **Residual Functional Capacity Determination**

27        Plaintiff next argues that the ALJ erred in determining her residual functional
28  capacity. (Dkt. # 21 Pt. 3 at 9-11.) RFC is defined as the most the claimant can do despite

the limitations caused by her impairments. SSR 96-8p (July 2, 1996).[5] The RFC determination may be based on a wide variety of evidence in the record – the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id.* "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* A court must "affirm the ALJ's determination of [the claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ offered just such a narrative discussion with specific citations founded on substantial evidence. (*See* R. at 13-15.) The crux of Plaintiff's argument to the contrary is her assertion that the ALJ should have incorporated Plaintiff's ostensible need to elevate her legs while sitting into her RFC. (Dkt. # 21 Pt. 3 at 9-11.) The ALJ acknowledged that there was evidence from Dr. Bachrach that Plaintiff would need leg elevation when seated (*see* R. at 131, 341, 356, 359, 388), but he pointed out that there was inconsistency in the evidence on the point, given that Dr. Bachrach gave conflicting statements about whether Plaintiff would need to alternate sitting and standing and that his conception of what would be entailed as part of those restrictions was not entirely clear. (R. at 14-15.)

The ALJ also pointed out that Dr. McPhee, the consultative medical examiner, stated that Plaintiff could perform essentially any level of work activity that did not involve standing or walking more than four to five hours per day. (R. at 15; *see* R. at 350.) In response to a question on Plaintiff's "limitations in sitting," Dr. McPhee provided only one

---

[5]Social Security Rulings are binding on ALJs. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 n.6 (9th Cir.1989).

- 10 -

1  limitation: that she could sit for no more than six to eight hours in a work day. (R. at 351.)
2  Contrary to Plaintiff's assertion, the ALJ could rationally conclude from the fact that Dr.
3  McPhee provided only one sitting limitation that this was the only sitting limitation Dr.
4  McPhee found applicable.

5  As noted by the ALJ, Dr. McPhee's assessment was consistent with other substantial
6  evidence in the record, namely Plaintiff's present job that required standing four and a half
7  hours per day, five days per week. (R. at 15.) The ALJ could rationally conclude from the
8  evidence that Plaintiff was engaged in such a level of work that Plaintiff was not so disabled
9  that she could only work if sitting with her legs elevated. Thus, assuming that Dr.
10 Bachrach's ultimate opinion is that Plaintiff needs to sit with her legs elevated, the ALJ had
11 a legitimate basis on which to credit Dr. McPhee's testimony and not Dr. Bachrach's.
12 *Magallanes*, 881 F.2d at 751 ("To reject the opinion of a treating physician which conflicts
13 with that of an examining physician, the ALJ must make findings setting forth specific,
14 legitimate reasons for doing so that are based on substantial evidence in the record.")
15 (internal quotations omitted). The ALJ therefore did not err in determining that Plaintiff's
16 RFC did not include the need to elevate her legs while sitting. *See Batson*, 359 F.3d at 1197
17 (holding that an ALJ is not required to incorporate evidence from the opinions of physicians
18 if it is permissibly discounted); *see also Bayliss*, 427 F.3d at 1217 (affirming the ALJ's RFC
19 determination because the ALJ "took into account those limitations for which there was
20 record support that did not depend on [the claimant's] subjective complaints").

### C. The Vocational Expert's Testimony

Plaintiff further argues that the ALJ erred in relying on the testimony of the vocational expert. (Dkt. # 21 Pt. 3 at 11-13.) The vocational expert testified that Plaintiff's past work as a cashier was light,[6] semi-skilled work[7] with a Specific Vocational Preparation ("SVP") of 3.[8] (R. at 519.) The expert further testified that the skills of the position were transferable to sedentary cashiering. (R. at 520.) However, the expert did not provide a specific citation to the Dictionary of Occupational Titles ("DOT") that corresponded to Plaintiff's past work.

Although, as Defendant points out, DOT 211.462.014 ("Retail-Checker") properly corresponds to an SVP of 3, Plaintiff contends that the vocational expert could have been referring to DOT 211.462.010 ("Cashier II"), which has an SVP of 2 and not 3, and thus would not provide transferrable skills. Plaintiff asserts that the ALJ erred by not further exploring this DOT transferability issue with the vocational expert.

The Court finds no reversible error. Social Security Ruling 00-4p provides that "as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is [] consistency [between the vocational expert and the

---

[6]Light work requires exerting up to twenty pounds of force occasionally, ten pounds frequently, or a negligible amount of force constantly, as well as work that requires significant walking or standing. DOT Appendix C.

[7]Occupations are classified as either unskilled ("work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"), semi-skilled ("work which needs some skills but does not require doing the more complex work duties"), or skilled ("work qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced"). 20 C.F.R. § 404.1568(a)-(c); 20 C.F.R. § 416.968(a)-(c). Transferability between positions is also discussed in these sections. *See* 20 C.F.R. § 404.1568(d); 20 C.F.R. § 416.968(d).

[8]SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT Appendix C. It is characterized as being one of nine levels, with an SVP of 3 requiring "over 1 month up to and including 3 months." *Id.*

- 12 -

DOT]." SSR 00-4p (Dec. 4, 2000). If there is a conflict between the DOT guidelines and the testimony of the vocational expert, the ALJ is required to explicate that disparity:

> [B]efore relying on [vocational expert] evidence to support a disability determination or decision, our adjudicators must . . . [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the vocational expert] and information in the *Dictionary of Occupational Titles* . . . and . . . [e]xplain in the determination or decision how any conflict that has been identified was resolved.

*Id.* The ALJ is entitled to conclude that the vocational expert's testimony is more reliable than the DOT in making a disability determination, but "the adjudicator must resolve this conflict *before* relying on the [vocational expert's] evidence." *Id.* (emphasis added). The Ninth Circuit has confirmed that SSR 00-4p is mandatory and therefore that an ALJ may not rely on a vocational expert's testimony without inquiring into and explaining any potential conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).

Here, while the ALJ did find in the hearing decision that there was no conflict with the DOT (R. at 15), he did not ask the vocational expert about the DOT at the hearing. Thus, the ALJ did err. However, the Ninth Circuit has also pointed out that this rule is subject to harmless error review. *Massachi*, 486 F.3d at 1154 n.19 ("This procedural error could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts . . . .").

Plaintiff concedes that the error was harmless here; she merely seems to view the error as an indictment of the ALJ's handling of her case. (Dkt. # 29 at 6 ("The ALJ's acceptance of the [vocational expert] testimony about transferable skills is not harmful error, but reflects the flawed analysis of Plaintiff's entire case.").) Thus, the Court does not have occasion to reverse on this ground.[9]

---

[9] The Court agrees with Plaintiff's concession that the error is harmless. Not only does the vocational expert's testimony comport with a relevant section of the DOT, but the ALJ also found Plaintiff not disabled under Medical-Vocational Guideline 201.21, and Plaintiff does not challenge that finding.

- 13 -

### D. Waiver of the Right to Representation

Plaintiff's final argument is that the ALJ erred in informing Plaintiff of her right to representation at the hearing, thereby failing to elicit a knowing and intelligent waiver of that right. (Dkt. # 21 Pt. 3 at 13-14.)  There is no constitutional right to representation at Social Security hearings; the right is only statutory.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see* 42 U.S.C. § 406(c) (Supp. 2008) ("The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also advise the claimant of the availability to qualifying claims of legal services organizations which provide legal services free of charge.").  This right falls "well below the Sixth Amendment threshold" for the right to counsel in a court proceeding.  *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987).

"The claimant must be properly informed of this right, but may waive it if given sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*."  *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (internal quotation omitted); *see also Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  "Information that will ensure a valid waiver of counsel includes an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees."  *Id.*[10]

Throughout the course of pursuing her claim, Plaintiff has been informed of her rights to representation several times.  In both the denial of Plaintiff's application and the denial of her request for reconsideration, Plaintiff was informed:

---

[10]The federal regulations do not require more.  *See* 20 C.F.R. § 404.1706 (explaining that the Social Security Administration will inform a claimant of "options for obtaining an attorney to represent you in dealing with us" and that "a legal services organization may provide you with legal representation free of charge").

- 14 -

> You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security Office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you fire someone, we must approve the fee before he or she can collect it. And if you fire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(R. at 27, 32.) In the Social Security Administration's notice of receipt of request for a hearing, Plaintiff was further informed:

> **Your Right to Representation**
>
> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it.
>
> We have enclosed the leaflet "Social Security and Your Right to Representation." We are also enclosing a list of groups that can help you find a representative.

(R. at 38.) Enclosed was a list of referral services for social security attorneys and a list of free legal aid services. (R. at 40-41.) In a letter giving notice of the hearing, Plaintiff was again informed:

> **You may choose to have a person represent you.**
>
> If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number.

(R. at 43.) Finally, at the hearing itself, the ALJ conducted the following colloquy with Plaintiff:

> ALJ:   The notice of hearing I sent you has information that you may be represented at this hearing by a lawyer or other representative. You're here without representation. I want to make sure you

- 15 -

|   |   |
|---|---|
|  | understand you have a right to representation, you have a right to waive that right if you want to proceed today. What's your wishes with regard to representation. |
| [Plaintiff]: | I don't wish to. |
| ALJ: | Proceed today? |
| [Plaintiff]: | Yes, please. |

(R. at 509.) Plaintiff now contends that she lacked sufficient information to enable her to intelligently decide whether to retain counsel.

However, Plaintiff was given sufficient information to ensure that her waiver was valid. The various documents Plaintiff was provided, and the ALJ's verbal questioning at the hearing, touched all of the requisite bases and sufficiently detailed the scope of Plaintiff's statutory right to counsel. That Plaintiff received much of the required information in writing before the hearing, rather than verbally at the hearing, does not invalidate the efficacy of the waiver. *See Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) ("The record reveals . . . that the ALJ did advise Ms. Carter of her right to counsel prior to the hearing, and that she waived that right. The notice of hearing, notice of denial, and notice of reconsideration sent to Ms. Carter also advised her of her right to representation. While the customary and better practice would seem to be to place both the advisement and the waiver on the record during the hearing, neither the pertinent statute, nor the regulations, nor our previous cases require any more advisement than was given in this case.") (internal citations omitted); *cf. Frank v. Chater*, 924 F. Supp. 416, 425 (E.D.N.Y. 1996) ("The preferable approach is to provide the claimant with adequate written notification prior to a hearing. . . . The better role for oral notification is as a mechanism for ensuring that a claimant who appears *pro se* at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected."). The ALJ therefore did not err.

## CONCLUSION

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

- 16 -

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 21) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Dkt. # 22) is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this action.

DATED this 25th day of February, 2009.

*H. Murray Snow*
G. Murray Snow
United States District Judge